Filed 12/23/22  P. v. Gay CA4/2
See dissenting opinion

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E079283 |
| v. | (Super.Ct.No. FVI08133) |
| JAMES ANDREW GAY, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Kawika Smith, Judge.  Affirmed.

Aaron J. Schechter, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

Defendant and appellant, James Andrew Gay, filed a petition for resentencing pursuant to Penal Code former section 1170.95.[1]  After holding an evidentiary hearing, the court denied defendant's petition.  Defense counsel filed a notice of appeal, after which this court appointed counsel to represent defendant on appeal.

Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*), setting forth a statement of the facts, a statement of the case, and three potentially arguable issues: (1) what the appropriate standard of appellate review of the trial court's findings should be; (2) whether the trial court erred in denying defendant's petition as to both counts; and (3) whether the court committed prejudicial error by excluding testimony from defendant about a purported letter sent to the prosecutor.[2]

We offered defendant an opportunity to file a personal supplemental brief, which he has not done.  We affirm.

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated. Effective June 30, 2022, Assembly Bill No. 200 (2021-2022 Reg. Sess.) amended and renumbered section 1170.95 as section 1172.6.  (Stats. 2022, ch. 58, § 10.)

[2]  In *People v. Delgadillo* (Dec. 19, 2022, S266305) ___ Cal.5th ___ [2022 Cal. Lexis 7654] (*Delgadillo*), the California Supreme Court held that *Wende* and *Anders* procedures do not apply in appeals from the denial of a section 1172.6 postjudgment petition.  (*Delgadillo*, at pp. *10-*11.)

## I.  FACTUAL AND PROCEDURAL BACKGROUND[3]

Joey Van Coe[4] testified at defendant's trial that on May 17, 1998, several people, including Coe, Steffon Moore, and Sidney Jackson were gathered at defendant's residence drinking and getting high.  Coe was close friends with Moore.  Moore's sister was defendant's girlfriend.  Jackson was defendant's half-brother.

Defendant told Coe his house had been burglarized twice.  Defendant said he knew who did it.  Defendant offered to take care of Coe's phone bill, which was about $100, if Coe dug a hole for him.  Coe knew that defendant intended the "hole" to be a grave.

Moore said that he and defendant were planning on killing Christopher Harvey.  Coe knew Harvey from seeing him at defendant's house.  Defendant said he was going to "dome" Harvey, which Coe guessed meant "shoot him in the head or something."

Coe and Moore then drove to Moore's house.  Cole, Moore, and defendant left to find a place to dig a hole; there were shovels and picks in the back of the car.  They chose a location.  Moore removed the shovels and a pick from the trunk and carried them down an embankment.  They dug for about 10 minutes.  They drove back to defendant's house.

---

[3] By order dated August 24, 2022, we granted defendant's request that we take judicial notice of the record in *People v. Gay* (July 11, 2000, E025449) [nonpub. opn.] (*Gay I*) from defendant's appeal of the judgment.  On the court's own motion, we also take judicial notice of our prior unpublished opinion from defendant's appeal from the striking of his petition in *People v. Gay* (June 10, 2021, E074995) [nonpub. opn.] (*Gay II*).  (Evid. Code, §§ 452, 459; Cal. Rules of Court, rule 8.1115(b).)

[4] Coe entered a plea of no contest to "a lesser offense" than murder in return for his testimony.

3

Coe looked for a screwdriver in one of defendant's drawers where he saw a revolver. Defendant put the gun in his waistband.

Harvey showed up at defendant's residence. Defendant told Coe to drive Jackson to where "the gravesite was." Defendant arrived and said that something had happened to Moore. Coe ran over to the van and saw Moore laying on the ground.

Jackson asked about Harvey; defendant said that he was dead. Jackson asked where the gun was; defendant said it was in the trunk. They dragged Moore back to the car. Moore was moaning. They headed for the hospital in separate cars; Coe, defendant, and Moore in one car, Jackson in another.

On the way, Coe got into a car accident. Jackson pulled in behind Coe; they moved Moore to Jackson's car; Jackson left to take Moore to the hospital while Coe waited for the police to arrive.

When the police spoke to Coe the next day, they told them they had found a van with Harvey's body inside; they said Coe's shoeprints were next to the van. Officers found a revolver next to Harvey's body, inside the vehicle, with three expended rounds and three unexpended rounds. One bullet went through the windshield from inside the van. Officers found Moore dead in the back of a van in a grass area off a dirt road. Both Harvey and Moore's bodies suffered from a single bullet wound.

An officer interviewed defendant, who reported that he, Coe, Moore, and Jackson had gone out to the area to buy acid tabs. Defendant initially said he did not hear any gunshots because they were listening to music. At some point, he heard Moore say, "'I am hit, I am hit.'"

4

Defendant said there had been discussions going on inside the van about money owed to Moore. Defendant later said he did hear a gunshot when Moore opened the passenger door of the van. "[H]e then heard a second gunshot and saw [Moore] fall back out of the van onto the ground." Defendant and Coe loaded Moore into defendant's car to take him to the hospital.

In another interview, defendant placed himself in the front passenger seat of the van with Harvey in the driver's seat and Moore in the backseat. Defendant said that he was inside the van when the first gunshot occurred. At one point, he said Harvey shot Moore and then shot himself.

At trial, defendant testified that his house had been burglarized. He denied asking anyone to dig a grave. According to defendant, Harvey and Moore started fighting. He heard a gunshot. Defendant went to the van and found Moore still breathing. They dragged him to the car to take him to the hospital. Defendant suspected Moore was shot.

The court instructed the jury with both theories of implied malice and felony murder. The People argued that Harvey was the intended victim. They argued defendant was guilty under the felony murder theory as to the killing of Moore.

The jury convicted defendant of first degree murder as to Harvey (§ 187, subd. (a), count 1) and second degree murder as to Moore (§ 187, subd. (a), count 2). The trial court sentenced defendant to 25 years to life on count 1, and 15 years to life on count 2, to be served consecutively. (*Gay I*, *supra*, E025449; *Gay II*, *supra*, E074995.)

On appeal, defendant contended the trial court erred in instructing the jury that it could use the first degree murder of Harvey as the underlying or predicate felony to

5

convict him of the second degree murder of Moore under the felony-murder rule. (*Gay I*, *supra*, E025449.) This court affirmed, holding that "[u]nder the second degree felony-murder rule, a defendant can be found guilty of murder, even in the absence of malice, if he or she committed the homicide in the perpetration of an inherently dangerous felony." (*Ibid*.) "Here, the death of Moore was an accidental and unintended result of Harvey's murder." (*Ibid*.) Finally, "even if first degree murder could not serve as the predicate felony for felony murder, any error was harmless . . . ." (*Ibid*.)

On January 18, 2019, defendant filed a form petition for resentencing pursuant to former section 1170.95. On March 22, 2019, the People filed a motion to strike the petition contending that Senate Bill No. 1437 (2017-2018 Reg. Sess.), which affected former section 1170.95 (Stats. 2018, ch. 1015, § 4), was unconstitutional. On July 26, 2019, defense counsel filed an opposition to the People's motion to strike. At a hearing on August 9, 2019, the court granted the People's motion to strike defendant's petition, concluding that Senate Bill No. 1437 was unconstitutional.[5]

Defendant appealed, contending Senate Bill No. 1437 was constitutional. The People conceded that the bill was constitutional; the People further conceded that we should reverse the order striking defendant's petition and remand the matter to the superior court to consider the petition on the merits. (*Gay II*, *supra*, E074995.) We reversed the order striking defendant's petition and remanded the matter for further proceedings. (*Ibid*.)

---

[5] The minute order reflects that the court denied the petition.

On October 27, 2021, on remand, defense counsel filed a brief in support of defendant's former section 1170.95 petition, arguing that defendant had made a prima facie showing and that the court should issue an order to show cause. At a hearing on January 28, 2022, the People argued defendant had failed to make a prima facie showing on the count 1 offense; however, the People conceded that defendant had made a prima facie showing on his conviction for the count 2 offense:[6] "[O]n the second-degree murder we argued felony murder, second-degree felony murder." The court issued an order to show cause with respect to the petition in its entirety.

On March 2, 2022, the People filed a motion to deny defendant's petition.[7] The People argued: "As to count one, the People did not argue either felony murder nor were the jurors instructed on it. The People argued that the Petitioner was either the actual killer, or that he aided and abetted in the murder of Christopher Harvey." "Therefore, . . . the evidence presented at the OSC will prove beyond reasonable doubt that the petitioner would still be convicted under a valid theory of first-degree murder in count one."

The People further argued: "In count two, the jury was given instructions on second degree felony murder with the underlining 'inherently dangerous felony' being that of murder as well as second degree implied malice murder. In count two, the People argued both the second-degree felony murder and the second-degree implied malice

_____

[6] The minute order incorrectly reflects that the People conceded defendant had made a prima facie showing as to both counts.

[7] The People requested the superior court take judicial notice of the record and opinion in *Gay I*, *supra*, E025449, the latter of which they attached to the motion.

7

murder doctrines in the murder of Steffen Moore." "The totality of the evidence shows that the petitioner committed a premeditated murder within the confines of an occupied vehicle and was aware that those actions endangered the life of another and acted with conscious disregard of those dangers to life. Therefore, for the reasons stated above, the evidence presented at the OSC will prove beyond reasonable doubt that the petitioner would still be convicted under the valid theory of second-degree implied malice murder." "Therefore, for the reasons stated above, there is evidence beyond a reasonable doubt that in count one, the petitioner is guilty of first-degree premeditated murder and in count of second-degree implied malice murder."

At the evidentiary hearing on June 10, 2022, the court took judicial notice of the court file and granted a stipulation to enter all exhibits and transcripts into evidence. The court indicated it had read the records.

Defendant's brother, Sydney Jackson, testified that when he testified at trial, he was untruthful that defendant was at the scene of the murder because the People had threatened if he testified otherwise, they were going to have Jackson imprisoned for life. Jackson was not at the scene of the murder and, therefore, could not truthfully testify as to whether defendant was there.

Defendant testified he was never present at the scene of any murder, was not involved in any murder, was not involved in any shooting, and has never killed anyone. After his trial, he had a conversation with Coe about a letter he had sent to the People. The People objected to the line of questioning. Defense counsel explained that Coe, who was a witness at trial, had told defendant that he had mailed a letter to the People

8

explaining that defendant was not involved or present in the murder at all: "Basically indicating to [the People] that [defendant] was completely innocent of this case and these charges."

The court ruled: "At this point, I'll allow you to inquire into this area, with the understanding that there may be some issues with what weight it's given." However, after further discussion with the People, the court said: "I'm going to reverse my ruling. I do think there are problematic issues with hearsay and best evidence. It's, I don't think I'll permit [defendant] to testify as to a letter, which apparently is not going to be placed into evidence." The court asked defense counsel whether he had a copy of the letter; defense counsel responded that he did not.

Defendant testified that he remembered hearing one gunshot. He remembered testifying at trial that he heard a single gunshot. Defendant testified that he was high on drugs the night of the murder: "I was so high and out of it . . . . I mean, I don't remember too much that day." Asked if his drug use affected his memory, defendant responded: "A lot right now. I can't remember nothing." He said it was possible for him to be so high that he did something without any idea that he had done it, but that people would later tell him about what he had done. Defendant then testified he was not at the scene of the shooting.

Defendant testified the letter from Coe was given to the judge and discussed on the date the court sentenced him. Defense counsel requested the court review the court file for the letter. The court said: "We have made a request for the Court file. It's in storage.

9

They said it is, it has been scanned, so they're looking through the . . . microfiche, old school scan. And they're going to scan to see if they can find a letter."

The People argued: "[A]s to Count 1, the changes in the law have no effect. There was no natural, probable consequence argument. There was no further argument. It was strictly premeditated murder. Either as the actual shooter, or as the aider and abettor. [¶] . . . [¶] As to Steffon Moore, the argument the People made [to] the jury . . . was, second degree felony murder, with the underlying felony, inherently dangerous to human life, murder. That is . . . no longer an acceptable theory. [¶] The other theory we argued was an implied malice. And the implied malice is slightly different than your natural and probable consequence because it requires both a mens rea and an actus reus. And it's still an acceptable theory of law."

Defense counsel asked that the court "grant the motion as to both counts, based upon the fact that again, there's no evidence to tie [defendant], no scientific, physical evidence, to tie [defendant] to these murders. Either one of them. The only evidence is this tainted, coerced, threatened testimony from a few young men who were being essentially twisted up by law enforcement and told what to say." The court took the matter under submission.

On June 29, 2022, the court noted: "I have read the transcripts in the case. All of the material in the binders and both District Attorney and Defense motions. [¶] So at this time, the Court will find that the People have proven beyond a reasonable doubt that [defendant] is guilty of the first degree murder of Christopher Harvey, as alleged in Count 1. And of second degree murder of Steffen Moore as alleged in Count 2."

10

The court continued: "While there was no direct evidence regarding who pulled the trigger that resulted in the deaths of Harvey and Moore, the direct and circumstantial evidence in this case support the verdicts of first degree murder as to Harvey and second degree murder as to Moore, even absent the felony murder rule." Defendant "committed an act that resulted in the death of Harvey and that he acted with expressed malice and without legal justification, and that the killing was willful, deliberate, and premeditated." Defendant "is responsible for Moore's death and is liable for second degree murder under the implied malice theory."

The court further observed: "Jackson's testimony at the trial and at the June 10, 2022, hearing, also failed to mitigate [defendant]'s culpability, and he made himself appear to be less than candid. The Court did not find his assertions that he was pressured into testifying falsely by the prosecutor to be credible, thus it does not bear on the findings of this Court. [¶] [Defendant]'s testimony at his trial was internally inconsistent and inconsistent with the physical evidence and inconsistent with the testimony of other more credible witnesses. His testimony on June 10th, 2022, did not rehabilitate that testimony, and only intended to further taint [defendant]'s credibility, rather than enlighten the Court." The court denied defendant's petition.

## II. DISCUSSION

Although we are not required to independently review the record for potential errors in an appeal from the denial of a former section 1170.95 petition, we exercise our discretion to do so. (*Delgadillo*, *supra*, ___ Cal.5th ___ [2022 Cal. Lexis 7654 at p. *18 ["[If the appellate court wishes, it may also exercise its discretion to conduct its own

11

independent review of the record in the interest of justice."]; *id.* at p. *22 ["[I]t is wholly within the court's discretion [to] conduct[] its own independent review of the record in any individual section 1172.6 appeal."] *id.* at p. *25, fn. 6 ["[T]he decision to conduct independent review is solely up to the discretion of the Courts of Appeal . . . .].) We find no arguable issues.

### III. DISPOSITION

The order denying defendant's petition is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

I concur:


RAMIREZ
P. J.

12

[*People v. James Andrew Gay*, E079283]

MENETREZ, J., Dissenting.

Because this is an appeal from a postjudgment order, *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 do not require us to read the entire record ourselves to look for arguable grounds for reversal. (*People v. Delgadillo* (Dec. 19, 2022, S266305) ___ Cal.5th ___, ___ [2022 Cal. Lexis 7654, pp. *10-*11] (*Delgadillo*).) Because defendant's counsel filed a brief raising no issues, and defendant was given an opportunity to file a personal supplemental brief but declined, we may dismiss the appeal. (*Id.* at p. *21.)

Although we have discretion to conduct *Wende* review even when it is not required (*Delgadillo*, *supra*, [2022 Cal. Lexis at p. *18]), judicial discretion "'is not a whimsical, uncontrolled power.'" (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773.) "Independent review in *Wende* appeals consumes substantial judicial resources," and "[t]he state . . . has an interest in an 'economical and expeditious resolution' of an appeal from a decision that is 'presumptively accurate and just.'" (*Delgadillo*, at p. *16.) For these reasons, routinely conducting *Wende* review when a no-issue brief is filed in an appeal from a postjudgment order, in the absence of any case-specific reason to conduct such a review, would appear to be an abuse of discretion.

1

I respectfully dissent because there is no case-specific reason to conduct *Wende*

review here.  The appeal should be dismissed.

MENETREZ          
J.
